**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

BREANNE MAGGIO, KEVIN
MCCARTHY, MELISSA LOWRY, ADAM
ALZAIDI, MELISSA CUEVAS, PAMELA
GIARRIZZO, CAROLE GRANT, CYNTHIA
MEUSE, LATRONYA WILLIAMS, LISA
KOPECKI, MICHAEL DUNN, PATRICIA
DEAN, CATHERINE DUPONT, TERETTA
WILLIS, SHARON BECK, DAWN VAN
DER STEEG, KELLEY RIVERS, ERNEST
EASTER, JUBIN KWON, ANGELA
BRYANT, GIA PASCARELLI, SHANNON
WEISMAN, STUART BERGMAN, BRIAN
HYMAS, TRISHA NADEAU, LESLIE
SULLIVAN, ROBERT TREPPER, ERIC
LEMONS, SR., REBEKAH KLEMM, and
NATALIA STORK, individually and on
behalf of all others similarly situated,

     *Plaintiffs,*

     v.

THE PROCTER & GAMBLE COMPANY,

     *Defendant.*

No. 2:25-MD-03157-DRC-KAJ

Honorable Douglas R. Cole

ORAL ARGUMENT REQUESTED

**REPLY IN SUPPORT OF
THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

ARGUMENT...................................................................................................................3

I.     Plaintiffs Fail to Plausibly Allege Consumer Deception ............................................3

     A.     Plaintiffs Cannot Ignore the Plain Text of P&G's Advertisements..............3

     B.     Plaintiffs Fail to Plausibly Allege that the "Protect-Grow-Restore" Logo Is False or Misleading ...................................................................8

           1.     *Protect:* Plaintiffs Do Not Deny that Charmin and Puffs Products Are FSC Certified and Appropriately Use the "FSC Mix" Logo ...................................................................................9

           2.     *Grow:* Plaintiffs Do Not Deny that P&G's Third-Party Suppliers Replant At Least Two Trees for Every One Harvested....................................................................................15

           3.     *Restore:* Plaintiffs Do Not Deny that P&G Has Partnered with the Arbor Day Foundation to Replant One Million Trees .......17

           4.     Plaintiffs Do Not Deny that P&G Properly Uses the Forest Allies Logo on Charmin and Puffs Packaging...................................18

     C.     Plaintiffs Admit P&G's Statements to Investors About Its Deforestation Policies Do Not Mislead Reasonable Consumers .................20

     D.     Plaintiffs Fail to Establish that P&G Had Any Duty to Disclose Information About Third-Party Suppliers' Forestry Practices ....................20

II.     Plaintiffs Do Not Plead Their Claims with Sufficient Particularity ........................21

III.     Fraudulent Concealment Is Not an Independent Cause of Action Under Many of the State Laws ...................................................................................23

IV.     Plaintiff Maggio's Claims Fail for Additional Reasons............................................24

     A.     Plaintiff Maggio Cannot Bring Claims that Are Barred by State Laws ........................................................................................................25

     B.     Count III of the *Maggio* Complaint Is a "Shotgun Pleading"........................26

     C.     Plaintiff Maggio Cannot Maintain an Implied Warranty Claim.................27

i

     D.     Plaintiff Maggio's Unjust Enrichment Claim Is Duplicative ........................28

CONCLUSION ..............................................................................................................................28

CERTIFICATE OF SERVICE .....................................................................................................30

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adeghe v. Procter & Gamble Co.,*
2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) ....................................................... 26, 27

*Akridge v. Whole Foods Mkt. Grp., Inc.,*
2022 WL 955945 (S.D.N.Y. Mar. 30, 2022) ...................................................... 27

*Am. BioCare Inc. v. Howard & Howard Att'ys Pllc,*
702 F. App'x 416 (6th Cir. 2017) .................................................................... 23

*Andren v. Alere, Inc.,*
207 F. Supp. 3d 1133 (S.D. Cal. 2016) ........................................................... 21

*Boghossian v. Capella Univ.,*
LLC, 2025 WL 934878 (S.D.N.Y. Mar. 27, 2025) ............................................ 21

*Bohen v. ConAgra Brands, Inc.,*
2024 WL 1254128 (N.D. Ill. Mar. 25, 2024) ............................................... 13, 20

*Bryan v. Del Monte Foods, Inc.,*
2024 WL 4866952 (9th Cir. Nov. 22, 2024) ...................................................... 12

*Buonasera v. Honest Co., Inc.,*
208 F. Supp. 3d 555 (S.D.N.Y. 2016) ............................................................... 27

*Connick v. Suzuki Motor Co., Ltd.,*
675 N.E.2d 584 (Ill. 1996) ............................................................................... 24

*Corsello v. Verizon N.Y., Inc.,*
967 N.E.2d 1177 (N.Y. 2012)............................................................................ 28

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.,*
7 F.3d 357 (3d Cir. 1993)................................................................................. 25

*Dorris v. Danone Waters of Am.,*
2024 WL 4792048 (S.D.N.Y. Nov. 14, 2024)..................................................... 4, 5

*Dwyer v. Allbirds, Inc.,*
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .......................................................... 13, 20

*ECM BioFilms, Inc. v. F.T.C.,*
851 F.3d 599 (6th Cir. 2017) .................................................................. 9, 15, 16

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013) ................................................................ 7

*In re Grand Theft Auto Video Game Consumer Litig. (No. II),*
    2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ........................................ 26

*Greer v. Strange Honey Farm, LLC,*
    114 F.4th 605 (6th Cir. 2024) ....................................................... 22, 23

*GridKor, LLC v. Collins,*
    2025 WL 2301190 (E.D. Pa. Aug. 8, 2025) ......................................... 24

*Hawkins v. Shimano N. Am. Bicycle Inc.,*
    2024 WL 4405249 (C.D. Cal. Aug. 1, 2024) ....................................... 21

*Ivanoff v. Walmart Inc.,*
    2025 WL 2207924 (S.D. Ohio Aug. 4, 2025) ....................................... 23

*Iverson v. Johnson Gas Appliance Co.,*
    172 F.3d 524 (8th Cir. 1999) .............................................................. 24

*La Rosa v. SPD Swiss Precision Diagnostics GmbH,*
    2025 WL 841687 (2d Cir. Mar. 18, 2025) ........................................... 28

*Langan v. Johnson & Johnson Consumer Cos.,*
    897 F.3d 88 (2d Cir. 2018) ................................................................. 26

*Lee v. Can. Goose US, Inc.,*
    2021 WL 2665955 (S.D.N.Y. June 29, 2021) ............................... *passim*

*Lugones v. Pete & Gerry's Organic, LLC,*
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) ................................................. 26

*Marcum v. Columbia Gas Transmission, LLC,*
    423 F. Supp. 3d 115 (E.D. Pa. 2019) .................................................. 24

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.,*
    62 F. Supp. 2d 236 (D. Mass. 1999) ................................................... 13

*McCullough v. World Wrestling Ent., Inc.,*
    172 F. Supp. 3d 528 (D. Conn. 2016) ................................................. 24

*McGinity v. Procter & Gamble Co.,*
    69 F.4th 1093 (9th Cir. 2023) ............................................................ 12

*McWhorter v. Procter & Gamble Co.*,
  2025 WL 948061 (N.D. Cal. Mar. 28, 2025), *appeal filed*, No. 25-
  3161 (9th Cir.)...................................................................................................... 4

*Moore v. Pendavinji*,
  260 N.E.3d 111 (Ill. App. Ct. 2024)..................................................................... 24

*Myers v. Starbucks Corp.*,
  2020 WL 13302437 (C.D. Cal. July 29, 2020)................................................. 13, 19

*In re Nat'l Prescription Opiate Litig.*,
  956 F.3d 838 (6th Cir. 2020) ............................................................................... 25

*Piescik v. CVS Pharmacy, Inc.*,
  576 F. Supp. 3d 1125 (S.D. Fla. 2021) ................................................................. 2

*In re PPA Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006) ............................................................................. 25

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
  683 F.3d 239 (6th Cir. 2012) ............................................................................... 20

*Ricciuti v. N.Y.C. Transit Auth.*,
  941 F.2d 119 (2d Cir. 1991).................................................................................. 27

*Sanchez v. Walmart Inc.*,
  733 F. Supp. 3d 653 (N.D. Ill. 2024) ............................................................... 13, 20

*Sorkin v. Kroger Co.*,
  2024 WL 3673719 (N.D. Ill. Aug. 6, 2024)....................................................... 16, 17

*Stolzoff v. Waste Sys. Int'l, Inc.*,
  792 N.E.2d 1031 (Mass. App. Ct. 2003)................................................................ 24

*In re Terrorists Attacks on Sept. 11, 2001*,
  740 F. Supp. 2d 494 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir.
  2013)....................................................................................................................... 25

*Titan Ins. Co. v. Hyten*,
  817 N.W.2d 562 (Mich. 2012)................................................................................ 24

*Tomasella v. Nestle USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020).................................................................................... 5

*Trs. of Twin City Bricklayers Fringe Ben. Funds v. Superior
  Waterproofing, Inc.*,
  450 F.3d 324 (8th Cir. 2006) ................................................................................ 24

*Warren v. Coca-Cola Co.*,
670 F. Supp. 3d 72 (S.D.N.Y. 2023) ........................................................ 4

*West v. Molson Coors Beverage Co. USA, LLC*,
2024 WL 3718613 (E.D.N.Y. Aug. 7, 2024) ........................................... 11

*West v. Sambazon, Inc.*,
750 F. Supp. 3d 356 (S.D.N.Y. 2024) .........................................*passim*

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024)............................................... 8, 11, 12, 22

*Wysong Corp. v. APN, Inc.*,
889 F.3d 267 (6th Cir. 2018) ............................................................ 4, 6

**Other Authorities**

16 C.F.R. § 260.1(a)............................................................................. 7

16 C.F.R. § 260.4(c) ............................................................................ 8

## INTRODUCTION

Plaintiffs' response to the motion to dismiss only confirms that their purported false advertising suit is not based on any actual false advertising.  Instead, Plaintiffs brought this suit based on grievances about the forestry practices P&G's third-party suppliers allegedly use—practices that are approved and closely overseen by the Canadian government and certified by the Forest Stewardship Council ("FSC")—without alleging P&G makes any statements to consumers about those practices.  For example, while Plaintiffs claim "P&G sources its wood pulp from suppliers who employ industrial logging practices," Opp'n 6, Plaintiffs do not allege P&G says anything about those practices.  Because Plaintiffs are unable to identify *any* actual false statements, they pivot and argue that "literally accurate components do not immunize a misleading overall message."  Opp'n 19.  But the supposedly "misleading overall message" with which Plaintiffs take issue is not misleading at all because P&G fully explains its statements to consumers.  Indeed, P&G expressly invites consumers to "learn how [P&G] helps to protect, grow and restore trees at Charmin.com" or "Puffs.com/learnmore."  Compl. ¶¶ 248-49.  These websites explain exactly what P&G's statements mean, and Plaintiffs are not free to ignore P&G's explanations.

Specifically, the websites to which P&G directs consumers explain that, when P&G says it helps "protect" trees, P&G means its products "only use pulp certified by the Forest Stewardship Council" and it "support[s] FSC in their work to increase adoption of FSC products."  *Id.* ¶ 262 (screenshot).  When it says it helps "grow" trees, P&G means, "[f]or every tree used, at least two are regrown in its place."  *Id.*  And when it says it helps "restore" trees, P&G means it is "partnering with the Arbor Day Foundation to plant 1

1

million trees in forests affected by natural disasters, like wildfires or hurricanes." *Id.* Without alleging any basis to argue that P&G's explanations are actually false or misleading, Plaintiffs ask this Court to entirely ignore P&G's explanations and allow this lawsuit to proceed based on Plaintiffs' fanciful assertions about the meaning of P&G's statements. That is not how false advertising laws work. "[A] reasonable consumer would not be expected to ignore" the invitation to learn more and "the information it leads to." *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1133 (S.D. Fla. 2021).

Plaintiffs also assert that P&G's statements to consumers "create a false net impression of environmental stewardship," Opp'n 5, but they stitch together this supposed "net impression" based on a series of implausible assumptions. First, Plaintiffs argue a reasonable consumer cannot be expected to heed P&G's invitation to visit its websites to "learn how [P&G] helps to protect, grow and restore trees," Compl. ¶¶ 248-49, but then they jump to conclusions that this simple instruction means P&G somehow "increases forest canopy in the areas it harvests" and "remediates ecological harm elsewhere," Opp'n 5. P&G's bare invitation to "learn more" is simply that—an invitation that makes no such affirmative statements. And if Plaintiffs chose not to go to the website to learn how P&G protects, grows, and restores trees, they could not have been deceived by anything. Second, Plaintiffs contradict themselves by arguing that a reasonable consumer cannot be expected to look at a back label, while basing their "net impression" almost entirely on words and logos that appear ***on the back labels*** of Charmin and Puffs products. Reasonable consumers who admittedly rely on words and logos on the back label as a basis for their alleged confusion surely would look at the other neighboring logos of similar sizes to

2

inform their understanding.  Third, Plaintiffs argue a reasonable consumer would be misled by the third-party logos on Charmin and Puffs packaging, but Plaintiffs admit that P&G complies with the requirements to use those logos, which is fatal to their claims. Indeed, courts have uniformly held that reasonable consumers are not misled by third-party logos when the product meets the third-party requirements for displaying the logo. *See, e.g., West v. Sambazon, Inc.*, 750 F. Supp. 3d 356, 372-73 (S.D.N.Y. 2024).

The bottom line is that P&G's packaging did not make general unqualified claims that P&G protects, grows, and restores trees as Plaintiffs suggest.  Rather, it invited consumers to learn how P&G helps protect, grow, and restore trees and provided links with explanations that Plaintiffs cannot contest.  Plaintiffs' claims are predicated on interpretations of P&G's statements that are implausible because they are different from and ignore P&G's explanations.  The Court should dismiss Plaintiffs' claims with prejudice.

## ARGUMENT

### I.     Plaintiffs Fail to Plausibly Allege Consumer Deception

#### A.     Plaintiffs Cannot Ignore the Plain Text of P&G's Advertisements

Plaintiffs argue that P&G misleads consumers by telling them that "P&G safeguards forests, increases forest canopy in the areas it harvests, and remediates ecological harm elsewhere."  Opp'n 5.  But P&G never says any of those things.  Instead, P&G invites consumers to visit its websites to "*learn how*" P&G "helps to protect, grow and restore trees."  Compl. ¶¶ 248-49 (emphasis added).  P&G's websites then explain precisely what the words "protect," "grow," and "restore" mean.  *See id.* ¶¶ 262, 266.  Plaintiffs' overbroad and fanciful interpretations do not negate or alter the statements P&G actually makes.

3

P&G's invitation to "learn how" P&G "helps to protect, grow and restore trees" is simply that—an invitation to visit P&G's websites to obtain information.  In light of this instruction, "a reasonable consumer would be expected to look beyond the … label to learn more about the representation and consult other additional information available." *Dorris v. Danone Waters of Am.*, 2024 WL 4792048, at *4 (S.D.N.Y. Nov. 14, 2024).  As the Sixth Circuit has emphasized, "*context matters*." *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 272 (6th Cir. 2018).  "[I]f there was any ambiguity as to what ['protect, grow and restore'] precisely meant," the label "would have prompted a reasonable consumer to learn more" on P&G's websites. *Dorris*, 2024 WL 4792048, at *6.  And where, as here, the advertisement "expressly defines a claim," Plaintiffs "cannot ignore that definition in favor of their own preferred interpretation." *McWhorter v. Procter & Gamble Co.*, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025), *appeal filed*, No. 25-3161 (9th Cir.); *accord Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 83 (S.D.N.Y. 2023).  Rather, "advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Dorris*, 2024 WL 4792048, at *6 (citation omitted).

Plaintiffs argue that consumers can choose not to learn more, ignore P&G's explanations of what its statements actually mean, and then bring claims based on sweeping and unreasonable interpretations of P&G's statements.  Opp'n 20-22.  But precedent from the Sixth Circuit and other courts throughout the country establish that reasonable consumers cannot ignore available clarifying information. *See, e.g.*, *Wysong Corp.*, 889 F.3d at 272 (affirming dismissal where plaintiff failed to "explain why the packages' ingredient

4

lists, themselves pictured in [plaintiff's] complaints, do not dispel the photographs' allegedly misleading  effects"); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020) (dismissing false advertising claims where defendants "made information about the prevalence of the worst forms of child labor in their supply chains publicly available through their websites"); *Dorris*, 2024 WL 4792048, at \*4 (disclosures on a website "mitigate[d] concerns of consumers being misled at the point of sale").  And Plaintiffs' effort to ignore P&G's explanations is in direct tension with their argument that "the inquiry turns on the net impression conveyed by the challenged representations, rather than the meaning of isolated words and phrases."  Opp'n 1.

Moreover, a reasonable consumer would be aware of P&G's explanations of its environmental claims.  In fact, Plaintiffs' own complaint acknowledges that "P&G's packaging" "directs consumers to its Sustainability Promise websites."  Compl. 116 & ¶ 262.  And the complaint alleges that those websites "reiterate[] the same Protect-Grow-Restore representations" as the Charmin and Puffs packaging.  *Id.* ¶¶ 262, 266.  Plaintiffs' response to the motion to dismiss is also peppered with screenshots of P&G "messaging" containing the precise explanations that Plaintiffs' lawyers claim reasonable consumers cannot be expected to review.  *See* Opp'n 25, 29, 34.

For similar reasons, Plaintiffs' five critiques of P&G's arguments miss the mark. *First*, Plaintiffs argue "[t]his case concerns point-of-sale consumer deception—and not Canada's forestry policy."  Opp'n 10.  But Plaintiffs ignore the actual statements P&G makes to consumers.  Their complaint instead focuses on criticizing the forestry practices that third-party forestry companies allegedly use and then criticizing P&G for allegedly

relying on those suppliers. That is not false advertising. It is a complaint about forestry practices that are closely regulated by the Canadian government and certified by the FSC.

*Second*, Plaintiffs argue that "courts should not adopt a defendant's preferred interpretation of its own marketing at the pleadings stage where the challenged representation is susceptible to more than one reasonable reading." Opp'n 11. But Plaintiffs' readings of P&G's advertisements are not reasonable. For example, Plaintiffs take the simple statement that P&G is "partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters," and interpret it to mean that P&G is achieving "an ecosystem-level benefit." Opp'n 34. Yet P&G never says it is achieving "an ecosystem-level benefit." Plaintiffs' fanciful interpretation is a far cry from what P&G actually says and ignores P&G's actual explanation.

*Third*, Plaintiffs criticize P&G for supposedly "defend[ing] each component of its marketing in isolation." Opp'n 11. Acknowledging they cannot contest the truth of P&G's actual statements, Plaintiffs argue that "literal truths do not immunize a statement from being misleading" and that "courts must evaluate the label as a whole." Opp'n 19, 31. But that is precisely P&G's point: "*context matters.*" *Wysong Corp.*, 889 F.3d at 272. It is Plaintiffs—not P&G—who are trying to ignore the context and overall narrative of P&G's statements to consumers. They would have the Court focus in on a few words, phrases, and images—and then attribute incredibly broad and wildly illogical meanings to those words, phrases, and images—while completely ignoring the surrounding context of P&G's statements and the easily accessible explanations P&G provides. "A plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the

6

language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Yet that is exactly what Plaintiffs do here.

*Fourth*, Plaintiffs attack what they characterize as P&G's "context cures theory," and argue that consumers are free to arbitrarily ignore "back-panel qualifiers" and "website materials" because that context cannot possibly "cure" the "impression" a product's "front-label messaging conveys." Opp'n 12. But the irony of Plaintiffs' argument is that most of the statements they challenge as misleading appear on the ***back label*** of Charmin and Puffs packaging—right next to the "FSC Mix" label that Plaintiffs claim they can ignore. *See* Compl. ¶¶ 248-49, 295 (screenshots). And Plaintiffs' own complaint is full of images of P&G's explanations of what the "Protect-Grow-Restore" logo means.

*Fifth*, Plaintiffs argue that "unqualified environmental claims are presumed deceptive because they convey broad assurances without clear, prominent, and understandable limitations." But P&G's statements are not "unqualified." Opp'n 12. P&G does not state in absolute terms that it protects, grows, and restores trees; rather, it says "*learn how*" P&G helps protect, grow and restore trees and qualifies the statement by directing consumers to websites that explain precisely what each component means. For these same reasons, Plaintiffs' reliance on the FTC's Green Guides is misplaced. The Green Guides are designed to "help marketers avoid making environmental marketing claims that are unfair or deceptive." 16 C.F.R. § 260.1(a). To that end, the Green Guides do not prohibit marketers from making general environmental claims; nor do they endorse the concept of a "net impression" that ignores specifics. Instead, the Green Guides clearly state that

marketers can make general environmental claims as long as they qualify them. *Id.* § 260.4(c) ("Marketers can qualify general environmental benefit claims to prevent deception ...."). That is precisely what P&G does. Plaintiffs' entire case is premised on ignoring and twisting what P&G actually says.

In short, Plaintiffs' attempt to warp P&G's *invitation* to "learn how" it "helps to protect, grow and restore trees" into actionable misrepresentations by ignoring (but simultaneously and inexplicably citing) P&G's explanations of these terms—while paradoxically advancing a "net impression" theory based on Plaintiffs' own cherrypicked context—should not be allowed to proceed. If reasonable consumers could simply ignore P&G's explanations (they cannot), they would be left with a mere invitation to obtain information, not an actionable representation. Indeed, a "label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781-82 (9th Cir. 2024). Conversely, if reasonable consumers would go to the website to review P&G's explanations, they would understand what P&G's statements mean, and because Plaintiffs cannot actually allege these explanations are false, Plaintiffs are left with no plausible theory of deception. The Court should dismiss Plaintiffs' claims.

### B. Plaintiffs Fail to Plausibly Allege that the "Protect-Grow-Restore" Logo Is False or Misleading

Plaintiffs do not dispute that: (1) Charmin and Puffs products are certified by the FSC, and P&G uses the "FSC Mix" logo in accordance with the FSC's rules (the "Protect" prong); (2) P&G's third-party suppliers replant two trees for every one they harvest (the

"Grow" prong); (3) P&G has partnered with the Arbor Day Foundation to replant one million trees in areas affected by natural disasters (the "Restore" prong); or (4) P&G is authorized to use the Rainforest Alliance's Forest Allies logo on its packaging. Yet Plaintiffs claim P&G cannot make any of these true statements because it might give consumers a false "net impression" that P&G does other things to protect the environment that it never claims to do. That is not the standard for false advertising.[1]  And Plaintiffs fail to plausibly allege that the statements P&G actually makes are false or misleading.

### 1.  *Protect:* **Plaintiffs Do Not Deny that Charmin and Puffs Products Are FSC Certified and Appropriately Use the "FSC Mix" Logo**

P&G's websites explain that, when P&G says it helps "protect" trees, P&G means its products "only use pulp certified by the Forest Stewardship Council" and it "support[s] FSC in their work to increase adoption of FSC products." Compl. ¶¶ 262, 266 (screenshots). Plaintiffs argue these statements are misleading. Opp'n 24-29. But Plaintiffs cannot actually contest that Charmin and Puffs products are FSC certified. "[A] reasonable consumer generally would not deem an accurate statement to be misleading, and hence, such statement generally would not be actionable." *Lee v. Can. Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021) (citation omitted). Instead, Plaintiffs

---

[1] Plaintiffs invent this "net impression" standard by misapplying *ECM BioFilms, Inc. v. F.T.C.*, 851 F.3d 599 (6th Cir. 2017). Contrary to Plaintiffs' contentions, *ECM BioFilms* did not "instruct[] courts to 'examine[] the overall net impression of an ad'" in every false advertising case. Opp'n 11 (citation omitted). Rather, *ECM BioFilms* involved the Sixth Circuit's "deferential review" of FTC findings *under the FTC Act*. 851 F.3d at 604, 609-10, 614. The Sixth Circuit explained that, in making findings under the FTC Act, "the *Commission* 'examines the overall net impression of the ad.'" *Id.* at 610 (emphasis added). And although Plaintiffs argue this "net impression" standard has been "applied universally in consumer-deception cases," not one of the cases Plaintiffs cite in support actually uses the phrase "net impression." *See* Opp'n 1-2, 11, 14-15 (supposedly cataloguing cases).

speculate that (a) the products *might* contain wood pulp that is not FSC certified at all, (b) reasonable consumers would not look at the back label to clarify the meaning of the standalone FSC logo on the front, (c) reasonable consumers would not understand what the "FSC Mix" logo means, and (d) the FSC logo conveys that Charmin and Puffs products offer a general environmental benefit. All of these arguments are unfounded.

*First*, Plaintiffs assume P&G's statements about FSC certification must be false because "P&G's own 2021 Forestry Practices Report states that 'the availability of FSC-certified pulp [in Canada] is insufficient to meet the demands of our industry,' and that P&G's internal target for 2022 was only '75%' FSC-certified pulp, with a plan to reach '100%' by 2030." Opp'n 26. But Plaintiffs' assumptions are baseless. As the report makes clear, "P&G purchases wood pulp for tissue, *towel*, and *absorbent hygiene products*," including diapers and feminine care products. Declaration of Catherine Y.N. Gannon Ex. 1 at 8 (Forestry Practices Report March 2021) (emphasis added). In other words, P&G sells products that rely on wood pulp other than Charmin and Puffs. The mere fact that P&G had not achieved 100% FSC certification for *all* of its products by 2022 does not mean that it had not achieved 100% FSC certification for Charmin and Puffs products. To the contrary, the FSC would not have allowed P&G to display the "FSC Mix" logo on its products if all of the wood pulp in its products did not come from "FSC-certified forests, recycled materials, and/or FSC-controlled wood." Compl. ¶ 288 (screenshot).[2]

---

[2] Likewise, the mere fact that P&G relied on the Sustainable Forestry Initiative and the Programme for the Endorsement of Forest Certification to certify the wood pulp used in *some of its products* in 2021 does not demonstrate that P&G relied on those entities to certify the wood pulp used in Charmin and Puffs products. *See* Opp'n 8, 26-27.

*Second*, Plaintiffs argue that consumers cannot be expected to look at the "back-label FSC Mix logo" after seeing the supposedly "unambiguous and unqualified FSC logo on the front" of Charmin and Puffs products. Opp'n 27. But this assertion defies common sense. The *only* allegedly misleading statement that appears on the front of the packaging is the standalone FSC logo. Compl. ¶¶ 246, 249 (screenshots). All the other challenged statements and logos appear on the back label. *Id.* ¶¶ 248-49 (screenshots). And as the complaint shows, the FSC Mix logo appears right next to the Rainforest Alliance Forest Allies logo (which Plaintiffs also challenge as misleading) and is roughly the same size:



*Id.* ¶ 295 (screenshot). It is implausible that a reasonable consumer would be misled by other statements and images on the back label but completely ignore the "FSC Mix" logo that appears next to them. *See, e.g.*, *West v. Molson Coors Beverage Co. USA, LLC*, 2024 WL 3718613, at *5 (E.D.N.Y. Aug. 7, 2024) ("Reasonable consumers would not read the first word and completely ignore the other two.").

Plaintiffs also argue that "*Whiteside* expressly rejected the very portion of *McGinity* suggesting that back-panel disclosures may 'cure' unqualified front-label environmental representations." Opp'n 38. Not so. *Whiteside* merely distinguished *McGinity*, and clarified that *McGinity* was entirely consistent with the principle that "a front label is ambig-

uous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside*, 108 F.4th at 781-82. *Whiteside* did not overrule or reject *McGinity*'s reasoning that ambiguity in "a front label … can be resolved by reference to the back label." *Id.* at 779 (quoting *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023)).

Furthermore, *Whiteside* is clearly distinguishable from this case. In *Whiteside*, the Ninth Circuit held that the front of a product's packaging was unambiguously deceptive and thus that the district court improperly considered the back label. *Id.* at 781-83. Here, Plaintiffs have not alleged facts making it plausible that the FSC logo standing alone is unambiguously deceptive. Indeed, because the standalone FSC logo makes no representations about the applicable level of FSC certification, "reasonable consumers would necessarily require more information before reasonably concluding that the [FSC logo] is making a particular representation." *Id.* at 781; *see also, e.g., Bryan v. Del Monte Foods, Inc.*, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024) ("fruit naturals" on the front of the label was ambiguous, and thus, a reasonable consumer would require more information).

*Third*, Plaintiffs do not dispute the FSC requires products bearing the standalone FSC logo on the front of the packaging to also display the "FSC Mix" logo on the back, Mot. at 11, but contend that "a reasonable consumer would not understand" the meaning of "the industry term 'FSC Mix,'" Opp'n 27. This logic only underscores that Plaintiffs' claims are wholly implausible. If consumers are not familiar with the specific FSC certifications, then they could not possibly confuse the standalone FSC logo on the front of the package with the "FSC 100%" certification, a certification that does not appear on Charmin or

12

Puffs.[3]  Moreover, the complaint contains an image from the FSC website describing the various levels of certification (Compl. ¶ 288)—so reasonable consumer is entirely capable of finding out what the "FSC Mix" logo means through minimal investigation.  *See, e.g., Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 243 (D. Mass. 1999) ("Reliance cannot be deemed reasonable … when minimal investigation would have revealed the truth.").

*Fourth*, Plaintiffs argue that "an environmental certification or seal of approval (like FSC's) likely conveys that the product offers a general environmental benefit."  Opp'n 28.  But courts have uniformly held that statements or logos indicating that a product has been certified by a third party merely convey that the product has been certified and do not convey "a false, deceptive, or misleading statement about the product."  *Bohen v. ConAgra Brands, Inc.*, 2024 WL 1254128, at *7 (N.D. Ill. Mar. 25, 2024); *see also, e.g., Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 671 (N.D. Ill. 2024) ("Plaintiff takes issue with MSC's sustainability representation because it certifies fisheries that engage in un-sustainable practices, but Walmart's representation remains true—the product meets the Council's standards."); *West*, 750 F. Supp. 3d at 372-73 (similar); *Lee*, 2021 WL 2665955, at *6 (similar); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153 (S.D.N.Y. 2022) (similar); *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *5 (C.D. Cal. July 29, 2020) (similar).

Plaintiffs attempt to distinguish the uniform authority on this issue by arguing that

---

[3] Plaintiffs make the conclusory assertion that the FSC logo is "a well-recognized inde-pendent certification symbol that directly conveys to consumers a message of environmen-tal assurance."  Opp'n 38.  But Plaintiffs identify no factual allegations in support.  In-stead, they merely cite the paragraph of their complaint that shows an image of the FSC's explanation of what each FSC certification level means.  *Id.* (citing Compl. ¶ 288).

"none of these cases involved a situation like this one, where an FSC Mix seal is embedded within a cohesive branding campaign." Opp'n 28-29. That is simply false. Many of these cases involved other related messages about the products. For example, in *West*, the packaging stated that "'[e]very time you enjoy [the Products] you're … directly giving back to family farmers who harvest wild Açaí' and 'driving positive impact' by 'Fair Wages & Labor Practices,'" in addition to displaying a "Fair for Life" certification logo. 750 F. Supp. 3d at 361. Likewise, in *Lee*, the defendant touted its "commitment to support the ethical, responsible, and sustainable sourcing and use of real fur," alongside statements that its products used fur that was certified by third parties. 2021 WL 2665955, at *2. In each of these cases, the court dismissed the challenge to the third-party certification.

Plaintiffs identify no authority to the contrary. They point to *Koh v. S.C. Johnson & Son, Inc.*, but that case involved a label that plaintiff alleged was "deceptively *designed to look like* a third party seal of approval, which it is not." 2010 WL 94265, at *1 (N.D. Cal. Jan. 6, 2010) (emphasis added). The court concluded that plaintiff plausibly alleged consumer deception because "it is plausible that a reasonable consumer would interpret the … label as being from a third party." *Id.* at *2. By contrast, here, the Charmin and Puffs products are certified by a third party and P&G followed the third party's instructions for displaying the "FSC Mix" logo. Plaintiffs also rely on *Rawson v. ALDI, Inc.*, but that case did not address whether the certification label itself was false or misleading. 2022 WL 1556395, at *2 (N.D. Ill. May 17, 2022). Rather, *Rawson* held that the certification label did not clarify the meaning of another, unconnected label on the packaging that said: "Simple. Sustainable. Seafood." *Id.* at 1-2. Here, P&G is not arguing that the FSC labels clarify

14

the meaning of other statements on the Charmin and Puffs packaging.  Finally, Plaintiffs argue that "the FTC Green Guides warn that a marketer's use of an environmental certification or seal of approval (like FSC's) likely conveys that the product offers a general environmental benefit."  Opp'n 28.  But courts have uniformly held that a third-party logo is not deceptive when the product meets the third party's criteria for displaying it.

### 2. *Grow:* Plaintiffs Do Not Deny that P&G's Third-Party Suppliers Replant At Least Two Trees for Every One Harvested

P&G's websites explain that, when P&G says it helps "grow" trees, P&G means that, "[f]or every tree used, at least two are regrown in its place."  Compl. ¶¶ 262, 266 (screenshots).  Plaintiffs again do not deny this statement is true.  Instead, they argue that (a) the statement lacks substantiation, (b) the "Grow" prong communicates a much broader environmental message than what P&G actually says, and (c) P&G's cases are distinguishable.  None of these arguments hold up.

*First*, Plaintiffs assert "[t]he Complaint includes ample allegations about P&G's lack of substantiation" for the claim that two trees are replanted for every one used.  Opp'n 31.  But alleging that P&G has not publicly published data substantiating the statement is not the same as alleging it is false.  And the complaint never goes so far as to allege that P&G's third-party suppliers do not replant at least two trees for every tree used.  Plaintiffs cannot make that allegation because P&G's statement is true.  Plaintiffs also claim *ECM BioFilms* "prevents P&G from evading its substantiation obligation."  Opp'n 31.  But Plaintiffs again misstate that case's holding.  In *ECM BioFilms*, the Sixth Circuit affirmed factual findings by the FTC that "no evidence supported [a company's claim] that [its] plastic would fully biodegrade within five years."  851 F.3d at 613.  The Sixth Circuit did

not hold that companies must publicly disclose to consumers all of the data substantiating their claims (which would be wholly impractical). And the mere assertion that P&G does not make its data publicly available does not plausibly show the "Grow" statement is false.

*Second*, Plaintiffs argue the "Grow" prong is misleading because it supposedly "communicates to a reasonable consumer that P&G is … replacing the ecological benefit lost during P&G's harvests" and "rebuild[ing] the ecological integrity of the forest." Opp'n 29. But Plaintiffs again seek to transform P&G's statement into something different than what it actually says. P&G does not claim its suppliers are "replacing" or "rebuilding" entire forests or ecosystems, or replanting trees in the Canadian boreal forest in a way that replicates the exact same conditions that existed before harvesting. That would be impossible. And no reasonable consumer would believe that is what P&G means. "Words don't mean whatever we want them to mean, [and a] plaintiff cannot sue based on every fanciful idea that springs to mind after reading the label." *Sorkin v. Kroger Co.*, 2024 WL 3673719, at *5 (N.D. Ill. Aug. 6, 2024)[4] (citation omitted).

*Third*, Plaintiffs try to distinguish P&G's cases by arguing that the plaintiffs in those cases "tried to load narrow terms with unsupported idiosyncratic meanings." Opp'n 32. But that is precisely what Plaintiffs do here. They allege P&G's statements that two trees are replanted for every tree used somehow indicated that P&G is "replacing the ecological benefit lost during P&G's harvests" and "rebuild[ing] the ecological integrity of the

---

[4] Plaintiffs also spill considerable ink arguing that different categories of consumers have different levels of sophistication. *See* Opp'n 33. But that is irrelevant. No reasonable consumer—of any level of sophistication—would jump to the conclusion that P&G is "replacing" or "rebuilding" entire forests and ecosystems simply because it tells consumers that "[f]or every tree used, at least two are regrown in its place." Compl. ¶¶ 262, 266.

forest." Opp'n 29. These fanciful interpretations are much like those in *Sorkin*, where the plaintiff claimed "Farm Fresh Eggs" implied the eggs were from "hens living on farms, with open green space, grass, hay and straw, pecking and playing in the fields," 2024 WL 3673719, at *1, or *Zahora v. Orgain LLC*, where the plaintiff claimed "Vanilla Bean Flavor" implied that "most of the flavor would come from vanilla beans and none would come from artificial flavors," 2021 WL 5140504, at *2 (N.D. Ill. Nov. 4, 2021). In those cases, and the others cited in P&G's motion, the courts dismissed the plaintiffs' fanciful interpretations as implausible.

### 3. *Restore:* **Plaintiffs Do Not Deny that P&G Has Partnered with the Arbor Day Foundation to Replant One Million Trees**

P&G's websites explain that, when P&G says it helps "restore" trees, P&G means it is "partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters." Compl. ¶ 262 (screenshot). As with their other claims, Plaintiffs do not contest that P&G has actually done what it says. Instead, Plaintiffs once again ignore P&G's actual statement and give it fanciful interpretations that are *not* what P&G says.

Plaintiffs argue the "Restore" prong somehow communicates "a message of broad ecological restoration" and conveys "an ecosystem-level benefit." Opp'n 34. Once again, P&G says no such thing. P&G never tells consumers that it is recovering entire forests or restoring entire ecosystems. Plaintiffs also complain that "planting one million trees represents 'the equivalent of one percent of boreal forest harvested every year in Canada.'" *Id.* at 34-35. But that is irrelevant in a purported false advertising case. P&G never says that it is replanting all the trees the lumber industry harvests in a year, and it makes no statement whatsoever about the boreal forest. Plaintiffs' assertions about percentages

17

have nothing to do with P&G's statement and are unlikely to even cross the mind of reasonable consumers—many (if not most) of whom are likely unaware of the boreal forest. While Plaintiffs may believe these planting efforts are inadequate, a false advertising lawsuit is not the appropriate vehicle to address their concerns.

### 4. Plaintiffs Do Not Deny that P&G Properly Uses the Forest Allies Logo on Charmin and Puffs Packaging

Plaintiffs admit P&G is authorized to use the Rainforest Alliance's Forest Allies logo. Nonetheless, Plaintiffs continue to argue the Forest Allies logo is misleading because (a) it allegedly resembles the Rainforest Alliance Certified seal, (b) courts purportedly treat third-party logos as express environmental claims, and (c) the logo supposedly conveys an impression of environmental compliance. All of these arguments fail.

*First*, Plaintiffs assert that "P&G's use of the Forest Allies logo is deceptively misleading because it is nearly identical to the prior Rainforest Alliance Certified seal." Opp'n 39. But Plaintiffs acknowledge they had no "personal familiarity with the prior Rainforest Alliance logo," Opp'n 40, and make no allegations that the Forest Allies logo misled them into believing the products were certified by the Rainforest Alliance, *see* Compl. ¶¶ 22-225. Instead, they argue other "consumers would reasonably interpret it as carrying the same core message of independent environmental vetting" because it supposedly "resembles the prior Rainforest Alliance Certified seal." Opp'n 40. Yet it is entirely unclear why a reasonable consumer would be familiar with the Rainforest Alliance Certified seal—let alone mistake the Forest Allies logo for it—when *none* of the *thirty named Plaintiffs* had any familiarity with the Rainforest Alliance Certified seal. Thus, Plaintiffs fail to plausibly allege that a reasonable consumer would confuse the Forest Allies logo for the Rainforest

18

Alliance Certified seal, jump to the conclusion that Charmin and Puffs products are certified by the Rainforest Alliance, or rely on this conclusion in making a purchasing decision.

*Second*, Plaintiffs argue that "[c]ourts consistently treat certification-like symbols as express environmental claims." Opp'n 39. But the only case Plaintiffs can identify in support is *Koh*, and as discussed above, that case is readily distinguishable. *Koh* involved a logo that was deceptively designed to look like a third-party logo, even though it was created by the seller of the product. 2010 WL 94265, at *1. Here, there is no dispute that the Rainforest Alliance created the Forest Allies logo and authorized P&G to use it on Charmin and Puffs products because of P&G's close partnership with the organization and dedication to promoting its mission. *See* Compl. ¶ 302. And Plaintiffs do not dispute P&G complies with the Rainforest Alliance's requirements for using the logo.

*Third*, Plaintiffs claim the Forest Allies logo is "part of a broader restorative narrative" and thus "conveys an even stronger impression of rigorous environmental compliance." Opp'n 39. But courts have routinely dismissed false advertising claims alleging that third-party logos were deceptive, even when those claims were paired with other alleged misstatements. *See, e.g.*, *West*, 750 F. Supp. 3d at 361, 372; *Lee*, 2021 WL 2665955, at *2, *6. In fact, this case is remarkably similar to *Myers*, where a court rejected claims that "the Rainforest Alliance seal creates a misleading impression" because plaintiff's "'false impression' theory" could not "cure her failure to identify a specific, affirmative misrepresentation." 2020 WL 13302437, at *5. Likewise, here, Plaintiffs cannot cure their failure to allege an affirmative misrepresentation by attempting to position the Forest Allies logo within a broader marketing narrative. At the end of the day, Plaintiffs simply

19

take issue with the Rainforest Alliance for allowing P&G to use the logo on its products, but that is no basis for a false advertising claim. *See, e.g.*, *West*, 750 F. Supp. 3d at 372; *Lee*, 2021 WL 2665955, at *6; *Bohen*, 2024 WL 1254128, at *7; *Dwyer*, 598 F. Supp. 3d at 153; *Sanchez*, 733 F. Supp. 3d at 671.

### C. Plaintiffs Admit P&G's Statements to Investors About Its Deforestation Policies Do Not Mislead Reasonable Consumers

Plaintiffs try to downplay their allegations about P&G's investor materials by arguing that they "do not claim that they were misled directly by these investor communications." Opp'n 51. At the same time, Plaintiffs continue to rely on these allegations to assert that P&G relies on "an unreasonably narrow definition of 'deforestation.'" *Id.* But Plaintiffs do not allege that P&G makes any statements to consumers about "deforestation," so the definition P&G uses for that term has no bearing on Plaintiffs' claims. Rather, Plaintiffs' reliance on these investor materials simply shows that this lawsuit is merely an activist case disguised as a false advertising case.

### D. Plaintiffs Fail to Establish that P&G Had Any Duty to Disclose Information About Third-Party Suppliers' Forestry Practices

Plaintiffs attempt to recharacterize P&G's true statements as "Common Omissions" and thereby argue P&G should have disclosed information to consumers about third-party suppliers' forestry practices. Opp'n 40-43. But an omission is only actionable when it is "grounded in a duty to disclose." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 254-55 (6th Cir. 2012) (citation omitted). And Plaintiffs fail to show that P&G had any duty to disclose additional information to consumers.

*First*, Plaintiffs contend that a duty to disclose supposedly arises where "a party makes partial representations to the counterparty but withholds other material facts."

20

Opp'n 42. P&G had no such duty here because it did not make any partial representations. As discussed above, P&G invited consumers to visit its websites to "learn how [P&G] helps to protect, grow and restore trees," and then explained precisely what those statements mean. Compl. ¶¶ 248-49, 262, 266. Plaintiffs fail to plausibly allege that any of those statements were false or misleading. And they cannot resuscitate their affirmative misrepresentation claims by recharacterizing them as "omissions" claims.

*Second*, P&G lacked any affirmative duty of disclosure because the allegedly omitted information was publicly available. "Plaintiffs cite no cases that impose a duty to disclose information that is a matter of public record." *Boghossian v. Capella Univ.*, LLC, 2025 WL 934878, at *9 (S.D.N.Y. Mar. 27, 2025). And Plaintiffs fail to allege that P&G had "superior knowledge" of third-party suppliers' forestry practices given "the number of publicly available complaints" online dating back to 2015. *See, e.g.*, *Hawkins v. Shimano N. Am. Bicycle Inc.*, 2024 WL 4405249, at *5 (C.D. Cal. Aug. 1, 2024). Indeed, Plaintiffs' complaint relies almost entirely on public sources that discuss the alleged forestry practices they claim P&G should have disclosed. *See* Mot. 36. "These allegations demonstrate that the material facts were not within the exclusive knowledge of Defendants but available to the public." *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal. 2016). And none of Plaintiffs' cases support their claim that P&G had an affirmative duty to disclose publicly available information about third-party suppliers' alleged forestry practices simply because P&G made a few truthful statements about its products.

## II. Plaintiffs Do Not Plead Their Claims with Sufficient Particularity

The plain text of Rule 9(b) requires a party "alleging fraud" to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must

"specify the 'who, what, when, where, and how' of the alleged fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024) (citation omitted). Plaintiffs point to several district court decisions holding that false advertising claims under the laws of certain states "are *not* subject to Rule 9(b)." Opp'n 45. But although "state law governs substantive issues," "federal law governs procedural issues" such as the applicable pleading standard. *Greer*, 114 F.4th at 613. And the Sixth Circuit has held that "Rule 9(b)'s pleading standard applies" to false advertising claims because those "substantive state-law claims are grounded in fraud." *Id.* at 614.

Plaintiffs argue in the alternative that they satisfy Rule 9(b) "by identifying the content of the advertising, alleging that P&G issued the advertising, [and] explaining how the advertisement misled consumers." Opp'n 46. But all their allegations about P&G's alleged misstatements *to the named Plaintiffs* are vague boilerplate assertions without any particularity whatsoever. None of their arguments to the contrary save their claims.

*First*, with respect to "what" fraud allegedly occurred, Plaintiffs contend they do not need to identify any specific advertisement that any named Plaintiff allegedly saw. Opp'n 46. But the case they cite in support, *Whiteside*, stands for the opposite proposition: The Ninth Circuit held that the plaintiff satisfied Rule 9(b) because she "allege[d] the particular label she herself saw." *Whiteside*, 108 F.4th at 786.

*Second*, Plaintiffs argue they adequately allege "when" the alleged fraud occurred because they allege they purchased Charmin and Puffs products "during date ranges." Opp'n 47. But *Greer* clearly held that a complaint does not satisfy Rule 9(b) where it fails to identify "a single specific date on which the statements were made to plaintiffs." 114

F.4th at 616.  That is precisely the situation here.  The complaint gives "a general time frame, but does not pinpoint a particular day or time when a misrepresentation occurred." *Am. BioCare Inc. v. Howard & Howard Att'ys Pllc*, 702 F. App'x 416, 422 (6th Cir. 2017).

*Third*, Plaintiffs assert that they adequately allege "how" the alleged fraud occurred because the complaint is supposedly "replete with examples of how Plaintiffs and class members were deceived by P&G's marketing efforts."  Opp'n 48.  But the only so-called "example" Plaintiffs identify is a generic statement about how P&G supposedly "misled consumers."  *Id.* (quoting Compl. ¶ 32).  Plaintiffs then insert "including Plaintiff Cuevas" in brackets in an effort to turn the generic "consumers" into the specific "Plaintiff Cuevas."  *Id.*  But that is not what the complaint actually says.  Plaintiffs never once explain how any specific named Plaintiff was misled by any specific advertisement.  *See* Compl. ¶¶ 22-225.  Plaintiffs do not even provide enough detail to meet the lower pleading standard of Rule 8, let alone the heightened pleading standard of Rule 9(b).  *See Ivanoff v. Walmart Inc.*, 2025 WL 2207924, at *35 (S.D. Ohio Aug. 4, 2025).

## III.  Fraudulent Concealment Is Not an Independent Cause of Action Under Many of the State Laws

P&G identified authority showing that fraudulent concealment is not an independent cause of action under the laws of Connecticut, Illinois, Massachusetts, Michigan, Minnesota, and Pennsylvania.  Mot. 39.  Plaintiffs make no effort to explain why those cases are wrong.  Instead, Plaintiffs simply provide a list of allegedly contrary cases.  But a closer look shows that Plaintiffs' cases do not actually save their claims.

***Minnesota:***  Both of Plaintiffs' cases rely on *In re TMJ Litigation* for the proposition that fraudulent concealment is an independent cause of action, *see Trs. of Twin City*

*Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006); *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999), but *TMJ Litigation* applied Delaware—not Minnesota—law, 113 F.3d 1484, 1497 (8th Cir. 1997).

**Pennsylvania:** Neither *GridKor, LLC v. Collins*, 2025 WL 2301190, at *14 (E.D. Pa. Aug. 8, 2025), nor *Marcum v. Columbia Gas Transmission, LLC*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019), considered whether Pennsylvania recognizes an independent cause of action for fraudulent concealment.

**Illinois:** Neither *Moore v. Pendavinji*, 260 N.E.3d 111, 117 (Ill. App. Ct. 2024), nor *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996), considered whether Illinois recognizes an independent cause of action for fraudulent concealment.

**Michigan:** *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567 (Mich. 2012), explained that "silent fraud, also known as fraudulent concealment," is a "contract law" doctrine that may provide remedies "if a contract is obtained as a result of fraud or misrepresentation." Here, Plaintiffs do not allege that they contracted with P&G.

**Massachusetts:** *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1038-40 (Mass. App. Ct. 2003), only discussed "fraudulent concealment" in the context of tolling the statute of limitations.

**Connecticut:** Plaintiffs' own case, *McCullough v. World Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 560 (D. Conn. 2016), expressly recognized that "fraudulent concealment is ***not*** a separate cause of action" under Connecticut law. (emphasis added).

## IV. Plaintiff Maggio's Claims Fail for Additional Reasons

In a separate brief, Plaintiff Maggio argues P&G cannot "challenge any claims" in

the *Maggio* complaint—and this Court cannot dismiss them—because this Court supposedly "hasn't even been presented with the underlying complaint in *Maggio*." Maggio Opp'n 3. That is both factually and legally incorrect.

*First*, the Judicial Panel on Multidistrict Litigation ordered that all of the "actions listed on Schedule A"—including *Maggio v. Procter & Gamble*—"are transferred to the Southern District of Ohio." ECF No. 1 at 2. This Court opened a docket for the case, No. 2:25-cv-00921-DRC-KAJ, and Plaintiff Maggio's complaint appears on that docket at ECF No. 1. The *Maggio* complaint clearly is before this Court.

*Second*, courts have uniformly held that "[a] transferee judge exercises all the powers of a district judge," including "authority to decide all pretrial motions … such as motions to dismiss," and "may make any pretrial order that the transferor court might have made in the absence of a transfer." *In re PPA Prods. Liab. Litig.*, 460 F.3d 1217, 1230-31 (9th Cir. 2006) (citation omitted); *accord In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 367 (3d Cir. 1993); *In re Terrorists Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 512 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir. 2013). And the Sixth Circuit has held that a transferee court "may *not* refuse to adjudicate motions properly filed" under Rule 12(b). *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 846 (6th Cir. 2020). This Court can and should adjudicate P&G's challenges to Plaintiff Maggio's complaint, which should be dismissed for the above reasons and the additional grounds below.

## A. Plaintiff Maggio Cannot Bring Claims that Are Barred by State Laws

Plaintiff Maggio cannot bring class claims under the laws of Alabama, Arkansas, Georgia, Louisiana, Montana, South Carolina, or Tennessee because those states' false

25

advertising statutes only permit individual actions.  Mot. 40.  Furthermore, Plaintiff cannot bring claims under the Mississippi Consumer Protection Act because she did not "attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General."  Mot. 41-42 (citation omitted).

Plaintiff Maggio does not respond to the substance of these arguments.  She instead argues it is "premature" to dismiss these claims because she brought a putative "nationwide class action."  Maggio Opp'n 3-4.  That makes no sense.  Plaintiff Maggio cannot bring a nationwide class action alleging violations of statutes that expressly prohibit class action claims.  And Plaintiff Maggio cannot avoid her pre-suit alternative dispute resolution obligations by merely professing to bring a putative class action.  Moreover, the cases Plaintiff Maggio cites do not support the rule she proposes.  Those cases merely say a court need not decide questions of typicality, predominance, and personal jurisdiction with respect to absent members of a putative class before the class certification stage.  *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 236 (S.D.N.Y. 2020); *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92-93 (2d Cir. 2018).

## B.    Count III of the *Maggio* Complaint Is a "Shotgun Pleading"

Count III asserts claims under the false advertising laws of *all fifty states* in a single count without any specifics.  Maggio Compl. ¶¶ 187-91.  A "shotgun pleading" such as this "provides Defendant with insufficient notice of the claims against it" under Rule 8.  *Adeghe v. Procter & Gamble Co.*, 2024 WL 22061, at *5 (S.D.N.Y. Jan. 2, 2024) (citation omitted).  Here too, Plaintiff Maggio responds that she does not need to satisfy Rule 8 because she brought a putative "nationwide class action."  Maggio Opp'n 3-4.  But every claim must

satisfy Rule 8. The purpose of Rule 8 is "to permit the defendant to have a fair under-standing of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Plaintiff Maggio's failure to satisfy Rule 8 "has made it impossible for [P&G] to assess what she ultimately hopes to prove." *Adeghe*, 2024 WL 22061, at *5 (citation omitted). And where, as here, a plaintiff alleges "numerous causes of action under a variety of state consumer protection statutes," a "'[s]hotgun pleading' is especially problematic … because the type and degree of protection offered by the various state laws varies extensively." *Id.*

### C. Plaintiff Maggio Cannot Maintain an Implied Warranty Claim

Plaintiff Maggio acknowledges that an implied warranty claim requires privity be-tween the plaintiff and defendant. Maggio Opp'n 4; *see* Mot. 42. And Plaintiff Maggio admits she cannot satisfy this requirement because she "has not purchased directly from P&G." Maggio Opp'n 4. She nevertheless speculates that putative "class members *may have*" "purchased directly from P&G" in the past. *Id.* (emphasis added). But Plaintiff Maggio's speculation that unnamed members of the putative class *might* have been in privity with P&G at some undisclosed time in the past does not cure her lack of standing.

Moreover, Plaintiff Maggio's cases simply say "a plaintiff *who has purchased some of the products they challenge* has class standing if the products are similar to other chal-lenged products or implicate the same challenged course of conduct by the defendants." *Akridge v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 955945, at *6 (S.D.N.Y. Mar. 30, 2022) (emphasis added); *accord Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016). That does not allow a named plaintiff who lacks standing to bring claims.

27

### D. Plaintiff Maggio's Unjust Enrichment Claim Is Duplicative

Plaintiff Maggio cannot bring her unjust enrichment claim because it is duplicative of her other claims. Mot. 42-43. Plaintiff Maggio argues a plaintiff is "permitted to plead unjust enrichment in the alternative where the contract governing the transaction and its applicability are in dispute." Opp'n 4 (citation omitted). But there is no such dispute—Plaintiff Maggio indisputably entered a contract with a third-party seller each time she purchased Charmin or Puffs products. Plaintiff Maggio also argues "[a] plaintiff 'may plead unjust enrichment in the alternative to a breach of warranty claim.'" *Id.* at 5 (citation omitted). Yet the Second Circuit has explained that "New York law bars unjust enrichment claims from serving as a 'catchall cause of action to be used when others fail.'" *La Rosa v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 841687, at *4 (2d Cir. Mar. 18, 2025) (citation omitted). Plaintiff Maggio's warranty claims and other claims fail because she cannot allege any false or misleading statements, and her unjust enrichment claims cannot cure those shortcomings. *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

### CONCLUSION

For these reasons and those stated in P&G's motion, the Court should dismiss Plaintiffs' claims in their entirety with prejudice under Rule 12(b)(6).

28

Dated: January 26, 2026

Respectfully submitted,

*/s/ Elizabeth P. Kessler*
Elizabeth P. Kessler (61730)
*Trial Counsel*
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Phone: (614) 281-3852
Email: ekessler@jonesday.com

David J. Lender (admitted *pro hac vice*)
Aaron J. Curtis (admitted *pro hac vice*)
Elaina K. Aquila (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Email: david.lender@weil.com
        aaron.curtis@weil.com
        elaina.aquila@weil.com

David R. Singh (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
Email: david.singh@weil.com

*Counsel for The Procter & Gamble Company*

29

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, a copy of the foregoing was served via electronic filing in the ECF system, which will send notice of filing to all counsel of record.

Dated: January 26, 2026 

*/s/ Elizabeth P. Kessler*
Elizabeth P. Kessler (61730)
*Trial Counsel*
JONES DAY
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43215
Phone: (614) 281-3852
Email: ekessler@jonesday.com

*Counsel for The Procter & Gamble Company*

30