# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| BREANNE MAGGIO, KEVIN MCCARTHY, MELISSA LOWRY, ADAM ALZAIDI, MELISSA CUEVAS, PAMELA GIARRIZZO, CAROLE GRANT, CYNTHIA MEUSE, LATRONYA WILLIAMS, LISA KOPECKI, MICHAEL DUNN, PATRICIA DEAN, CATHERINE DUPONT, TERETTA WILLIS, SHARON BECK, DAWN VAN DER STEEG, KELLEY RIVERS, ERNEST EASTER, JUBIN KWON, ANGELA BRYANT, GIA PASCARELLI, SHANNON WEISMAN, STUART BERGMAN, BRIAN HYMAS, TRISHA NADEAU, LESLIE SULLIVAN, ROBERT TREPPER, ERIC LEMONS, SR., REBEKAH KLEMM, and NATALIA STORK, individually and on behalf of all others similarly situated, | No. 2:25-MD-03157-DRC-KAJ <br><br> Honorable Douglas R. Cole |
| *Plaintiffs*, | |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | |
| *Defendant*. | |

## THE PROCTER & GAMBLE COMPANY'S REPLY IN SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE

**INTRODUCTION**

P&G's request for judicial notice simply asks this Court to consider information that appears on government websites and documents referenced in Plaintiffs' complaint. Plaintiffs respond that P&G's request for judicial notice is an effort to "tell a completely different story and thereby escape accountability for its deception." Opp'n 1. But P&G does not tell  or rely on any "story" in its motion to dismiss; it merely explains that Plaintiffs fail to identify any statements by P&G that are false or misleading. In fact, even if the Court were to disregard all of the documents P&G asks it to consider in the request for judicial notice, the Court would still have a clear basis to dismiss Plaintiffs' claims in their entirety because Plaintiffs have failed to allege any viable false advertising claims against P&G. Nevertheless, P&G respectfully requests that the Court take judicial notice of these documents because the Court is permitted to do so under applicable law. The documents provide greater context as to how Plaintiffs' claims fit within the Canadian regulatory landscape, and they also contain legible and complete information about the logos and other statements that Plaintiffs challenge in their complaint.

**ARGUMENT**

**I.     The Publicly Available Webpages and Articles Are Judicially Noticeable**

Federal Rule of Evidence 201(b)(2) provides that a court may "judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court should take judicial notice of Exhibits 1-6 because they are websites from the Canadian government and therefore their accuracy cannot reasonably be questioned. Singh Decl. ¶¶ 1-6. Plaintiffs argue that (a) the Court cannot take judicial notice of Exhibits 1-6 for

the truth of the matters stated therein and (b) Exhibits 1-6 have no relevance to Plaintiffs' claims. Both of these arguments are unfounded.

*First*, as the Sixth Circuit has explained, courts "routinely take judicial notice of information contained on … government websites." *Yoder v. Bowen*, 146 F.4th 516, 526 n.1 (6th Cir. 2025) (citation omitted); *accord Barton v. Neeley*, 114 F.4th 581, 589 n.2 (6th Cir. 2024) ("We consider these public records because they are readily available on the City of Flint's website and are contained in the district court's record."); *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (similar); *Denius v. Dunlap*, 330 F.3d 919, 927 (7th Cir. 2003) (similar). Indeed, courts are "permitted to judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, and this includes information posted on an official government website." *Epps v. United States*, 2024 WL 2176877, at *5 n.1 (S.D. Ohio May 15, 2024) (Cole, J.) (citation omitted); *accord Senterra Ltd. v. Rice Drilling D. LLC*, 2025 WL 2958658, at *2 (S.D. Ohio Oct. 20, 2025).

Plaintiffs admit they "do not dispute the proffered exhibits are publicly available online or published by the Government of Canada." Opp'n 3. Instead, Plaintiffs argue that "just because a document has been published by a governmental source does not throw open the door to take all of the 'facts' recited therein as truth." *Id.* But the Sixth Circuit regularly takes judicial notice of information on government websites for the truth of the statements therein. *See, e.g., Yoder*, 146 F.4th at 526 (taking judicial notice of government website to support conclusion that government officials "can patrol to enforce laws and regulations"); *Demis v. Sniezek*, 558 F.3d 508, 513 & n.2 (6th Cir. 2009) (taking

2

judicial notice of Bureau of Prisons website to show petitioner was released from custody). And Plaintiffs "have simply caused additional judicial work by contesting … factual issue[s] that, according to information readily available in the public domain, cannot be reasonably disputed." *Denius*, 330 F.3d at 927 (holding that the district court abused its discretion in withdrawing its judicial notice of information on government website).

*Second*, Plaintiffs argue that P&G "has not provided any explanation as to the relevancy of the requested documents to the determination of [P&G's] Motion to Dismiss." Opp'n 4. But the relevance of Exhibits 1-6 is clearly laid out in P&G's motion to dismiss. As Plaintiffs acknowledge, "in its ten-page factual background section of its motion," P&G "cites these documents no less than 22 times." Opp'n 1. Specifically, P&G relies on these exhibits to provide additional background and context for the allegations in Plaintiffs' complaint. Mot. to Dismiss 5-14. To be clear, P&G does not believe its motion to dismiss rises or falls based on whether the Court takes judicial notice of Exhibits 1-6. Yet these exhibits are relevant to understanding how the forestry practices Plaintiffs attempt to challenge in their complaint fit into the broader regulatory landscape in Canada. The Court should take judicial notice of Exhibits 1-6.

## II. The Complaint Incorporates by Reference the Charmin and Puffs Packaging and the Non-Governmental Websites

"[A] document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings … when [the document] is central to plaintiff's claim." *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). Although these documents are not directly attached to the complaint, Exhibits 7-15 are central to Plaintiffs' claims and thereby incorporated by reference into the complaint.

Plaintiffs attempt to challenge the authenticity of Exhibit 8 and argue that Exhibits 7 and 9-15 are not central to their claims. These arguments are without merit.

*Exhibit 8 (Charmin and Puffs Packaging):* Plaintiffs suggest that the Court cannot even consider the Charmin and Puffs packaging that they challenge in their complaint. Plaintiffs "oppose the authenticity, as well as the incorporation of this exhibit by reference, because Defendant [purportedly] cites it in its Motion to Dismiss to support its version of the facts." Opp'n 6. But the mere fact that a document may support a defendant's version of the facts does not mean that it lacks authentication or that it is not incorporated by reference. To the contrary, where, as here, "[t]he packaging and label in fact form[] the very basis of Plaintiff[s'] claims," the packaging and label are incorporated by reference into the complaint. *Maple v. Costco Wholesale Corp.*, 2013 WL 11842009, at *3 (E.D. Wash. Aug. 1, 2013); *accord Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) ("The complaint referred to these packaging-label photos, making them a cognizable part of the record."). Indeed, the crux of Plaintiffs' complaint is that Charmin and Puff packaging and online advertising are misleading to consumers. Yet the complaint contains only tiny images of the Charmin and Puffs packaging, and the actual labels that Plaintiffs challenge are often difficult to see in those images. *See, e.g.*, Compl. ¶¶ 248-49. P&G merely submitted Exhibit 8 in an effort to provide the Court with larger, more legible versions of the labels Plaintiffs challenge. As Plaintiffs' own case law explains, it is particularly appropriate for a court to consider clearer photos of product packaging in a false advertising case such as this where "the packaging referenced in

4

Plaintiff[s'] Complaint is illegible and incomplete." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 741 (N.D. Ohio 2010).

Plaintiffs also argue that P&G "has not offered anything to indicate the images came from a reliable source, from which product or time frame the images were taken, and has not authenticated the images are from products that were available for sale to consumers." Opp'n 6. But P&G's counsel declared under oath that Exhibit 8 consists of "true and correct copies of photographs of Charmin and Puffs packaging." Singh Decl. ¶ 8. And Plaintiffs' challenge to Exhibit 8's authenticity is remarkable given that Plaintiffs actually borrowed one of these images from an earlier motion that P&G filed in the Western District of Washington and used it in their complaint. *Compare* Compl. ¶ 295, *with* Singh Decl. Ex. 8. Plaintiffs apparently believed the image was sufficiently authentic to include in their complaint, but they now contest its authenticity (without pointing to anything that is missing or inaccurate) in response to P&G's request that the Court consider it in connection with the pending motion to dismiss.

At any rate, P&G can easily provide further authentication for the images in Exhibit 8. The photos of the Charmin packaging show labels that appeared on a package of Charmin Ultra Strong toilet paper that P&G's counsel purchased at a commercial retailer in New York City in March 2025. Declaration of Aaron J. Curtis in Support of P&G's Request for Judicial Notice ("Curtis Decl.") ¶ 1-3. P&G's counsel took the photos of the Charmin packaging on March 19, 2025. *Id.* ¶ 2. Similarly, the photos of the Puffs packaging show labels that appeared on a box of Puffs Ultra Soft facial tissues that P&G's

5

counsel purchased at a commercial retailer in New York City in approximately April 2025. *Id.* ¶ 4-6. P&G's counsel took the photos of the Puffs packaging on May 9, 2025. *Id.* ¶ 5.

*Exhibits 7, 9-10, and 14 (Forest Stewardship Council Webpages):* Plaintiffs admit they "do not oppose the authenticity of these exhibits or contest that they were publicly available." Opp'n 6-8. Plaintiffs nonetheless "oppose judicial notice and incorporation of these exhibits by reference because Defendant cites them in its Motion to Dismiss to support statements related to FSC logos and certification process, facts not at issue nor cited in the Consolidated Complaint." *Id.* at 7. But Plaintiffs' argument that they do not cite or reference these Forest Stewardship Council ("FSC") logos and standards is belied by their complaint. The complaint contains 268 references to the FSC. And the FSC's logos and certification standards are one of the focal points of Plaintiffs' allegations. *See, e.g., A.G. ex rel. N.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 839 n.2 (S.D. Ohio 2019) (considering a website at motion to dismiss stage because it was "referred to in the Complaint and [was] central to Plaintiff's claim").

Further, all of these webpages are central to Plaintiffs' claims, and they are incorporated by reference into the complaint. *First*, Plaintiffs repeatedly complain that P&G uses the standalone FSC logo on the front of Charmin and Puffs products. Compl. ¶¶ 6, 14, 245-47, 249, 251-56, 258-59, 290, 295, 307. Exhibit 7 is a publication from the FSC that explains its standards for using the standalone FSC logo on packaging. Singh Decl. Ex. 7. *Second*, Plaintiffs repeatedly complain about P&G's use of the "FSC Mix" label and the "controlled wood" designation. Compl. ¶¶ 14, 295-96, 304, 307, 325. Exhibit 9 is an FSC webpage that explains precisely what those terms mean. Singh Decl. Ex. 9. *Third*,

Plaintiffs' complaint contains a screenshot of an image from the same webpage that is included in Exhibit 10, which explains what the various FSC certifications mean. *Compare* Compl. ¶ 288, *with* Singh Decl. Ex. 10. Plaintiffs have no basis to argue that a webpage that is actually shown in their complaint is not incorporated by reference.[1] *Fourth*, Plaintiffs complain about P&G's purported reliance on third-party certifiers to certify wood pulp in its supply chain. Compl. ¶ 292. Exhibit 14 explains how FSC relies on "certifiers" who are "independent of FSC and the companies they are auditing" to "assess forest management and chain of custody operations using the FSC standards." Singh Decl. Ex. 14. Therefore, these webpages are all central to Plaintiffs' claims, and the Court should consider them.

**Exhibits 11-13 and 15 (Other Webpages):** Exhibit 11 is an article published by the Rainforest Alliance about its Forest Allies logo, Exhibit 12 is the Charmin Sustainability website, Exhibit 13 is the Puffs Sustainability Promise website, and Exhibit 15 is an National Resources Defense Council ("NRDC") article about Charmin. Singh Decl. ¶¶ 11-13, 15. Each of these webpages is incorporated by reference into Plaintiffs' complaint. Plaintiffs argue that P&G "has only identified one paragraph and one footnote each, for all but the NRDC article, for which Defendant has identified two paragraphs

---

[1] Plaintiffs argue that the Court cannot consider "additional information contained in the articles … if it is contradictory to the citations in the complaint and offered 'for the purpose of rebutting plaintiffs' assertions.'" Opp'n 5 (citation omitted). But the case they cite in support says the exact opposite: "There is some merit to defendants' contention that plaintiffs' selective citations to portions of the articles (that support their claims) constitute incorporation by reference thereby permitting the Court to consider other information contained in the articles that puts plaintiffs' cited information in context." *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 695 (N.D. Ohio 2025).

where Plaintiffs purportedly incorporated these exhibits by reference." Opp'n 8. But P&G simply gave examples of references to these webpages and did not identify every instance in which these webpages were referenced in the complaint. And regardless, courts do not assess whether a webpage is incorporated by reference merely based on the number of times it is referenced in a complaint. The question is whether the document and its contents are "central to plaintiff's claim." *Greenberg*, 177 F.3d at 514. In one case, a court in this District held that a website was incorporated by reference based on a single reference to the website in the complaint. *See A.G. ex rel. N.G.*, 363 F. Supp. 3d at 839 n.2 ("The complaint refers to the Blue Ridge website. (Doc. 1 at ¶ 17).").

In this case, each webpage is central to Plaintiffs' claims. *First*, Plaintiffs devote a substantial portion of their complaint to arguing that P&G's use of the Rainforest Alliance Forest Allies logo is misleading. Compl. ¶¶ 6, 8, 15, 248-49, 297-302. Plaintiffs also discuss the Rainforest Alliance's policies for using its logos and cite a webpage discussing the logos and related policies. *Id.* ¶ 301 & n.80. Exhibit 11 is simply the webpage Plaintiffs cite in their complaint. Singh Decl. Ex. 11. *Second*, Plaintiffs discuss the Charmin Sustainability and Puffs Sustainability Promise websites at length, and argue that those websites "reiterate[] the same Protect-Grow-Restore representations" as the Charmin and Puffs packaging. Compl. ¶¶ 262-66. Moreover, as Plaintiffs acknowledge, the "Protect-Grow-Restore" logo itself "directs consumers to [P&G's] Sustainability Promise websites," where P&G explains precisely what the logo means. *Id.* at 116. Exhibits 12 and 13 simply provide the Court with copies of the websites that Plaintiffs heavily rely on in their complaint. Singh Decl. Exs. 12-13. *Third*, Plaintiffs discuss the NRDC's criticisms of P&G

8

dating back to 2019 in support of their allegations that "P&G was previously confronted with its environmentally devastating practices."  Compl. ¶¶ 311-12.  Exhibit 15 is an article laying out the alleged NRDC complaints that Plaintiffs reference in their complaint.  Therefore, all of these documents are incorporated by reference, and the Court should consider them.

## CONCLUSION

For the above reasons, P&G respectfully requests that the Court take judicial notice of or otherwise consider under the incorporation-by-reference doctrine Exhibits 1-15 in ruling on P&G's Motion to Dismiss.

Dated: January 26, 2026

Respectfully submitted,

/s/ Elizabeth P. Kessler

Elizabeth P. Kessler
*Trial Counsel*
JONES DAY
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43215
Phone: (614) 281-3852
Email:  ekessler@jonesday.com

David J. Lender (admitted *pro hac vice*)
Aaron J. Curtis (admitted *pro hac vice*)
Elaina K. Aquila (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Email:  david.lender@weil.com
          aaron.curtis@weil.com
          elaina.aquila@weil.com

David R. Singh (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
Email:  david.singh@weil.com

*Counsel for The Procter & Gamble Company*

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, a copy of the foregoing was served via electronic filing in the ECF system, which will send notice of filing to all counsel of record.

Dated: January 26, 2026

/s/ Elizabeth P. Kessler
Elizabeth P. Kessler
JONES DAY
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43215
Phone: (614) 281-3852
Email: ekessler@jonesday.com

*Counsel for The Procter & Gamble Company*