# EXHIBIT

# A

FILED

JUL 6 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

HADASSAH SHELLENBERGER, Individually and On Behalf of All Others Similarly Situated,

Plaintiff - Appellant,

v.

AIG WARRANTYGUARD, INC.; WHIRLPOOL CORPORATION,

Defendants - Appellees.

No. 25-1448

D.C. No. 2:24-cv-00657-JLR

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted June 11, 2026
Portland, Oregon

Before: CHRISTEN, HURWITZ, and BADE, Circuit Judges.

Hadassah Shellenberger appeals the dismissal of her claim under the Washington Consumer Protection Act (CPA). *See* Wash. Rev. Code §§ 19.86.020, 19.86.093. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

The district court concluded that Shellenberger failed to plausibly allege the first element of a CPA claim: whether "the defendant has engaged in an unfair or deceptive act or practice." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 296 (Wash. 1997). Looking to Washington case law for guidance, *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007), this element is generally classified as "a mixed question of law and fact" because it typically involves "the application of legal precepts to a particular set of factual circumstances." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 647–50 (Wash. 2024). The tendency of an act or practice to deceive is evaluated from the perspective of a "reasonable" or "ordinary" consumer. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895–96 (Wash. 2009). "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Id.* at 894. The CPA provides that decisions of federal courts and of the Federal Trade Commission interpreting federal consumer protection statutes serve as guiding authority. *See* Wash. Rev. Code § 19.86.920; *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (2013).

Although the ultimate question of deceptiveness is a question of law, the subsidiary question of "the meaning of an advertisement" in the eyes of an ordinary consumer "is a question of fact." *State v. Living Essentials, LLC*, 436 P.3d 857, 873 (Wash. Ct. App. 2019) (quoting *FTC v. Nat'l Urological Grp., Inc.*,

645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009)) (brackets and ellipses omitted). Moreover, "[w]hen a seller's representation conveys more than one meaning to reasonable consumers, one of which is false, the seller is liable for the misleading interpretation." *Id.* (quoting *Nat'l Comm'n on Egg Nutrition*, 88 F.T.C. 89, 185 (1976), *modified*, 92 F.T.C. 848 (1978)). Accordingly, on a motion to dismiss, a district court assesses only whether the plaintiff's interpretation of the seller's message is plausible and whether that message, so interpreted, is deceptive. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Shellenberger alleged that Defendants' offer letter gave her the impression that the KitchenAid Service Plan would provide repairs or replacements for covered malfunctions, with repairs performed by KitchenAid-certified technicians, at no out-of-pocket expense to her. She alleged that this impression is inconsistent with the service contract, which contains a buyout option—exercisable at Defendants' sole discretion—that allows Defendants to satisfy all obligations under the service contract without providing a repair or replacement.

Shellenberger's interpretation of the offer letter is facially plausible. The offer letter mentions only repairs and replacements as modes of performance, and the buyout option in the service contract provides an alternative manner of performance that is inconsistent with the advertised benefits. So interpreted, the

letter "had the capacity to deceive a substantial portion of the public." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (quoting *Panag*, 204 P.3d at 894). The representation that repairs would be performed by "Factory Certified Technicians" was also plausibly misleading because it was inconsistent with Defendants' actual performance. *See* FTC, Policy Statement on Deception 2 (Oct. 14, 1983), https://www.ftc.gov/system/files/documents/public_statements/410531/831014deceptionstmt.pdf [https://perma.cc/4NCH-VJXZ] ("A failure to perform services promised under a warranty or by contract can also be deceptive.").

Defendants argue that the caveats in the offer letter and the asterisk pointing to the fine-print disclaimer make Shellenberger's interpretation implausible. We disagree. We find the purportedly curative language insufficiently clear "to change the apparent meaning" of the offer letter's representations "and to leave an accurate impression" about the nature of Defendants' services. *State v. LA Invs., LLC*, 410 P.3d 1183, 1195 (Wash. Ct. App. 2018) (quoting *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989)).

The language in the disclaimer stating that "[l]imitations and exclusions apply" and directing the consumer to "[s]ee the complete terms and conditions" online does not undermine the plausibility of Shellenberger's interpretation. Although an ordinary consumer would understand that a summary does not

describe all terms and conditions of a plan in full, a consumer can reasonably expect that the service contract will not contain any provisions that fundamentally change the plan advertised.

Defendants also assert that qualifiers like "covered" and "where applicable" make it unreasonable "to assume that any claim . . . under the Service Plan would always result in a repair or replacement." But the term "covered" is plausibly read to refer to Section 1 of the service contract, which specifies the circumstances under which the service plan covers a malfunction, not that Defendants might fulfill their obligations by means other than "repair or replacement." It is not necessary for Shellenberger's interpretation to be the only possible interpretation. *Living Essentials*, 436 P.3d at 873. And a reasonable consumer could read "where applicable" only as qualifying the representation immediately next to it: "100% parts and labor for covered repairs." *Cf. Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (emphasizing that "[t]he qualifying language appears immediately next to the representations it qualifies"); *Capitol Specialty Ins. Corp. v. JBC Ent. Holdings, Inc.*, 289 P.3d 735, 740 (Wash. Ct. App. 2012) (explaining that the use of "limiting language" in some places but not others suggests to a reasonable consumer that provisions without such language are not subject to limitation).

Finally, Defendants argue that "a consumer cannot plead deception under the [CPA] based on 'surprise' contract terms when the defendant made the full terms

available to the consumer, but the consumer failed to read them before signing." But consumer protection law is not limited to common-law standards prevailing in contract or tort.[1] An ordinary consumer generally "is not under any duty to make reasonable inquiry into the truth of advertising." *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975); *accord Young*, 472 P.3d at 994 (explaining that, under Washington law, "there [is no] need to prove reliance to establish the first element" of a CPA claim). The CPA was intended to "eliminate the 'gamesmanship' formerly attendant to the tradition of caveat emptor." *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 391 P.3d 582, 587 n.18 (Wash. Ct. App. 2017) (quoting *Testo v. Russ Dunmire Oldsmobile, Inc.*, 554 P.2d 349, 358 (Wash. Ct. App. 1976)). A seller cannot avoid liability for an otherwise deceptive practice by merely giving the consumer an opportunity to discover the deception. "[A] practice is unfair or deceptive if it induces contact through deception, even if the consumer later becomes fully informed before entering into the contract." *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 824–25 (Wash. Ct. App. 2001); *see also* FTC, Policy Statement on Deception 4 ("[W]hen the first contact

---

[1] Washington courts have found that a net impression conveyed may still be deemed deceptive to a reasonable consumer even where corrective language is provided on the face of a solicitation. *See, e.g.*, *LA Invs.*, 410 P.3d at 1187–88 (concluding that a solicitation letter gave the "net impression" that it was sent by the government even though letter included an express statement that it was not a government document).

between a seller and a buyer occurs through a deceptive practice, the law may be violated even if the truth is subsequently made known to the purchaser.”).

Whether a reasonable consumer would find a representation misleading is a fact-intensive question not typically susceptible to resolution at the motion to dismiss stage. *See Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015). It is only when the evidence “is so one-sided that one party must prevail as a matter of law,” *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986), or when “the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,” *Iqbal*, 556 U.S. at 679, that an issue like the first element of a CPA claim can be resolved by the court. We therefore conclude that the district court erred in dismissing Shellenberger’s CPA claim.

**REVERSED AND REMANDED**.